## L.V. APPLEBY, INC. v. Donald GRIFFES and Donald Griffes d/b/a New England Ventilation Technologies

[648 A.2d 808]

No. 92-079

January 14, 1993. Defendant Donald Griffes d/b/a New England Ventilation Technologies (NEVT),* a Vermont limited partnership engaged in the fabrication and installation of heating, ventilation and air conditioning (HVAC) units, appeals the superior court's order awarding plaintiff, L.V. Appleby, Inc., $11,292.91 in damages for defendant's breach of contract. We affirm.

Defendant ordered from plaintiff, a manufacturer's representative, a two-unit, specially manufactured dehumidifying pool heater, which defendant was to install, along with other HVAC equipment, at the Dover Watch construction project at Mt. Snow. Defendant took delivery of the units and placed them in storage on its property, as the building was not ready for installation. Due to financial difficulties at the Dover Watch project, defendant's underlying contract went sour and it became clear that it would never install the units. More than a year after delivery, the units were returned to the manufacturer by defendant per an agreement arranged by plaintiff, subject to a 20% restocking fee plus interest on the unpaid balance owed. Defendant refused to pay, and after trial, plaintiff was awarded $11,292.91, which included 20% of the wholesale price, the interest owed plaintiff by the manufacturer, plaintiff's reduced profit on the sale price after the 80% discount, plus interest. Defendant appeals this award on several grounds, enumerated below.

Defendant first claims that there was no contract because the purchase order lacked essential terms, to wit, the price and date of delivery. Further, defendant argues that certain preconditions were not met, including that defendant was to be notified prior to shipment and would be required to make partial payment. Because these preconditions were not met, defendant contends no contract was accepted. The trial court found against defendant on the facts supporting the formation of a contract.

The court found that the parties entered into a valid contract without preconditions, and there was sufficient understanding between the parties to establish a contract. 9A V.S.A. § 2–204 provides:

> (1) A contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.
>
> . . . .
>
> (3) Even though one or more terms are left open a contract for sale does not fail for indefi-

---

* NEVT became defunct as of July 1991.

niteness if the parties have intended to make a contract . . . .

Submission of the purchase order in response to plaintiff's price quotation and the parties' discussions was an offer to purchase the equipment, despite the order's omissions on price and delivery. The court further found that by filling the order and billing defendant, plaintiff accepted defendant's offer in a reasonable manner. Thus, the conduct of the parties was found to recognize the existence of a contract and to indicate agreement as to its terms. The findings are not contested, and therefore must stand. *Bills v. Wardsboro School District*, 150 Vt. 541, 543, 554 A.2d 673, 675 (1988). The court did not err in applying the law to the facts as found.

Defendant next argues that it rejected the units within a reasonable period of time, but that plaintiff refused return. It contends it acted solely as a bailee with respect to the units, citing 9A V.S.A. § 2-606(1)(c) to support its claim that it was proper to retain and store goods where the seller wrongfully refused their return. As an incident of nonconformity, defendant argues that delivery was made "two to eight weeks prior to any potentially proper delivery time."

Defendant had no grounds on which to reject the goods. First, delivery was not, in fact, early but within the six-to-twelve-week time frame discussed by the parties and relied on by defendant. Plaintiff received the purchase order dated September 12 on September 15, the units were shipped from Maine on October 28 (six weeks), and arrived in Vermont in early November, which is over six weeks. Any claim of early delivery is without merit.

Second, the trial court concluded, based on 9A V.S.A. §§ 2-601 and 2-602, the goods conformed to the contract. The units were specifically designed and manufactured for defendant's use in the Dover Watch project. There is no claim, or any evidence, that the units did not conform to the proper specifications. Moreover, it is apparent that it was not until defendant's underlying contract was in difficulty that defendant decided to reject the goods. As there was no nonconformity giving rise to rejection under § 2-601, § 2-602, which provides that rejection must occur within a reasonable time, is not applicable.

Defendant's third claim is that the damages were not reasonably foreseeable at the time of contract formation, and that the 20% restocking fee and interest awarded to plaintiff came about only by the adoption of a subsequent proposal by the manufacturer, a third party. Defendant argues that the subsequent proposal was a second contract, and could not have been foreseen at the time of formation of the first contract. Defendant misunderstands the concept of foreseeability. The reasonably foreseeable damages were the full cost of the special equipment that had been ordered, shipped and accepted by defendant. Plaintiff was able to mitigate those damages by obtaining the manufacturer's agreement to a return of the equipment. In this way, plaintiff was able to recoup a substantial portion of the purchase price. Thus, the reduced damages were a smaller part of the damages reasonably foreseeable at contract formation. Plaintiff's efforts provided a substantial savings to defendant, and were not an attempt to force upon it additional contract terms.

Additionally, plaintiff was entitled to interest as part of its damages. Defendant acknowledged in an October 6, 1989 letter to the Dover Watch de-

velopers that it was responsible to plaintiff for 20% of the purchase price plus damages. Defendant had notice of the interest charges since December 1988, and had represented that it was responsible to plaintiff for the interest in letters to the Dover Watch developers.

Defendant's final claim is that plaintiff, a New York corporation not registered to do business in Vermont, is precluded from maintaining an action in Vermont pursuant to 11 V.S.A. § 2120(a), which reads:

> A foreign corporation shall not maintain an action in this state upon a contract made by it in this state if, at the time of making such contract, it was doing business in this state without lawful authority.

NEVT contends that, if a contract exists, it was made in Vermont and that § 2120(a) applies to bar the present suit.

The trial court, relying on *Chase Commercial Corp. v. Barton*, 153 Vt. 457, 461, 571 A.2d 682, 685 (1990), found that the contract was made in New York, not Vermont. It is well-established that the "place of contract is where the last act essential to . . . completion was done," *West-Nesbitt, Inc. v. Randall*, 126 Vt. 481, 483, 236 A.2d 676, 678 (1967), and that acceptance is deemed to be the last act in completion of a contract. *Chase Commercial Corp.*, 153 Vt. at 461, 571 A.2d at 685. The court found that the purchase order sent by defendant to plaintiff in New York was the offer. It was accepted in New York by plaintiff, which ordered the goods from the manufacturer and then sent an invoice to defendant upon shipment. The court found plaintiff's actions were the last acts necessary to form

the contract. Section 2120(a) does not bar the action.

*Affirmed.*